53 F.3d 1012
 AMERICAN NATIONAL FIRE INSURANCE COMPANY,
Plaintiff-Counter-defendant-Appellant,
v.
Mark C. HUNGERFORD; W. Douglass Smith; Allen V. Hirsch;
Robert N. Tidball; Steven L. Pease; Herbert D. Montgomery;
Robert S. Leichtner; Robert W. Laversin,
Defendants-Counter-claimants-Appellees,
and
Shirley B. Daniels, and Barney and Rachel Milione,
Defendants-Appellees,
and
Great American Insurance Company, Counter-defendant-Appellant.
 No. 92-17081.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 18, 1994.
Decided April 27, 1995.
 
 Leonard S. Surdyk, Peterson & Ross, Chicago, IL, Carol G. Perry, St. Peter & Cooper, San Francisco, CA, for plaintiff-counter-defendant-appellant and counter-defendant-appellant.
 Barron L. Weinstein, Meredith & Weinstein, Larkspur, CA, George F. Bishop, Furth, Fahrner & Mason, San Francisco, CA, for defendants-counter-claimants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before: REINHARDT and LEAVY, Circuit Judges, and McLAUGHLIN,* District Judge.
 LEAVY, Circuit Judge:
 
 
 1
 This appeal arises out of the district court's entry of summary judgment in favor of the insured in a declaratory judgment action brought by the insurer. Because we conclude that the district court improperly exercised its discretionary jurisdiction, we vacate the judgment and remand with instructions to dismiss the case.
 
 FACTS AND PRIOR PROCEEDINGS
 
 2
 Mark Hungerford ("Hungerford") founded and served as Chairman of the Board and Chief Executive Officer of PLM Companies, Inc. ("PLMC"), a Delaware corporation with its principal place of business in California. Great American Insurance Company ("Great America") issued a Directors and Officers Liability Insurance Policy ("Policy") to PLMC that provided coverage to Hungerford in his capacity as an officer and director of PLMC. Pursuant to an endorsement to the Policy, American National Fire Insurance Company ("American National") subsequently assumed the coverage for PLMC's officers and directors.
 
 
 3
 PLMC was the sole owner of the outstanding stock of PLM Financial Services, Inc. ("FSI"); PLM Railcar Management Services, Inc. ("RMSI"); and PLM Transportation Equipment Management, Inc. ("TEMI"). FSI in turn was the sole owner of the outstanding stock of three other companies,[1] and served as the general partner of some twenty-three limited partnerships. In May of 1987, PLMC formed PLM International, Inc. ("PLMI") for the purpose of consolidating the equipment and leasing activities of the limited partnerships in which FSI served as general partner. A majority of the limited partners voted to approve the consolidation, which went into effect on February 1, 1988. As its contribution, PLMC transferred all of its stock in FSI, RMSI and TEMI to PLMI. In exchange, PLMC--which now became Transcisco Industries, Inc. ("Transisco")--acquired 36% of the outstanding shares of PLMI stock and $18 million in cash.
 
 
 4
 Disgruntled investors (i.e., the minority of limited partners who had voted against the consolidation) brought a class action in California state court against Transcisco, PLMI, FSI, Hungerford, and 50 Doe defendants, as well as others not relevant to this appeal. Daniels v. PLM Int'l, Inc., Case No. 884634, Superior Court of California, City and County of San Francisco (Filed November 27, 1987) ("Daniels" ). The only claims that survived demurrer involved allegations that all of the defendants had breached their fiduciary duties, and the individual defendants had aided and abetted in those alleged breaches.
 
 
 5
 After the filing of the complaint in Daniels, some of Transcisco's creditors filed an involuntary Chapter 7 bankruptcy petition against it. Transcisco successfully moved to convert the action from a Chapter 7 liquidation to a Chapter 11 reorganization, then filed an adversary proceeding against American National, seeking a declaration of coverage under the Policy for any liability in the Daniels action.[2] American National filed a counterclaim for a declaration of no coverage, and both parties subsequently filed motions for summary judgment. The bankruptcy court ruled that this was a non-core proceeding and issued Proposed Findings of Fact and Conclusions of Law in favor of American National.
 
 
 6
 During the pendency of the adversary proceeding, American National brought a separate action in federal district court against Hungerford, seeking a declaration of non-coverage in the Daniels action.[3] Hungerford filed an answer and counterclaim seeking, inter alia, a declaration of coverage under the Policy. Both parties later moved for summary judgment. Meanwhile, Transcisco filed in the district court its objections to the bankruptcy court's Proposed Findings of Fact and Conclusions of Law. The district court treated this filing as a related case to the pending declaratory judgment action.
 
 
 7
 The central issue in both the district court declaratory judgment action and the bankruptcy court proceeding was whether two exclusions in the Policy served to deny coverage for Hungerford. Exclusions 5 and 9 provide, respectively:
 
 
 8
 It is understood and agreed that the Insurer shall not be liable to make any payment for Loss based upon or attributable to or resulting from the offering of shares, management and/or operation and control of limited partnerships.
 
 
 9
 * * * * * *
 
 
 10
 It is understood and agreed that the Insurer shall not be liable to make any payment for Loss based upon or attributable to or arising out of the Directors, Officers or the Company acting as a General Partner of any Limited Partnership.
 
 
 11
 Hungerford argued that these provisions did not apply to exclude him from coverage in the Daniels case, while American National argued that they did. The district court ruled in favor of Hungerford, and American National has timely appealed.
 
 ANALYSIS
 Issue on Appeal
 
 12
 We note at the outset that the district court did not refer to the discretionary nature of its jurisdiction under the Declaratory Judgment Act, 28 U.S.C. Sec. 2201, but accepted the allegations in the Daniels complaint as true. See Underwriters Ins. Co. v. Purdie, 145 Cal.App.3d 57, 64, 193 Cal.Rptr. 248, 252 (1983). The court held that, as some of the loss might be independent of the individual defendants' actions as FSI, such loss would not be excluded by the Policy, and any breach of a fiduciary duty would be a concurrent cause of the loss. The court then granted the individual defendants' motion for summary judgment on the basis that the Policy could provide coverage for the claims alleged in Daniels. The court also declared that the Policy could provide coverage if the facts as alleged in the complaint were proven at trial, reasoning that the applicability of the exclusions depended on whether a fiduciary relationship existed between the limited partners and Hungerford, independent of the fiduciary relationship between the limited partners and FSI. It cautioned, however, that it was not finding that such an independent fiduciary relationship actually existed.
 
 
 13
 The district court went on to note that it was deciding both the declaratory judgment action and the objections to the bankruptcy court's proposed decision, because that was what the parties had agreed to, and that they would not seek a separate hearing in connection with Transcisco's objections. However, the district court only entered a final order in the declaratory judgment action, noting that it had not conducted a de novo review of the bankruptcy court's proposed decision. The court then invited the individual defendants to file an appropriate motion disposing of the bankruptcy appeal. It does not appear that any such motion was filed, and the district court did not enter a final order in Transcisco's objections to the bankruptcy court's proposed decision.
 
 
 14
 The notice of appeal in the case before us lists only the declaratory judgment. Therefore, the only issue before us involves the appeal from the district court's ruling in the declaratory judgment action filed by American National against Hungerford, not against Transcisco. Accordingly, Transcisco is not a party to this appeal, and the court did not exercise its jurisdiction over this case under 28 U.S.C. Sec. 158(a).
 
 
 15
 Finally, we note that, although the Daniels action was still pending when the district court made the above ruling, the parties subsequently entered into a settlement funded by American National. American National also reserved its rights under California law to seek reimbursement from Hungerford, should it be determined that American National's Policy did not cover this dispute.
 
 Jurisdiction
 
 16
 The Declaratory Judgment Act provides that, "In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. Sec. 2201.
 
 
 17
 The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so. Of course a District Court cannot decline to entertain an action as a matter of whim or personal disinclination. A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest.
 
 
 18
 Public Affairs Assocs. v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962) (per curiam) (internal citations and quotation omitted).
 
 
 19
 The record does not indicate why the district court decided to exercise its jurisdiction. This, however, does not prevent us from considering the issue. As we have previously stated, "[W]e review de novo the district court's decision to exercise its jurisdiction under the Declaratory Judgments Act when a state action is pending." Continental Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1370 (9th Cir.1991) (quoting Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1366 (9th Cir.1991)); see also American States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir.1994). In considering this issue, "[W]e are guided by the same criteria and factors as guide the district court in its exercise of jurisdiction." Robsac, 947 F.2d at 1370. "The court of appeals must exercise its own sound discretion to determine the propriety of the district court's grant or denial of declaratory relief." Id. (quoting United States v. Washington, 759 F.2d 1353, 1356-57 (9th Cir.) (en banc) (per curiam), cert. denied, 474 U.S. 994, 106 S.Ct. 407, 88 L.Ed.2d 358 (1985)).
 
 
 20
 In order to determine whether the district court properly exercised jurisdiction in this case, we must first determine whether the case presents an actual case or controversy. "[T]his requirement is identical to Article III's constitutional case or controversy requirement." Kearns, 15 F.3d at 143. We have previously held that a dispute between an insurer and its insured over the duties to defend and indemnify satisfies this requirement for purposes of the Declaratory Judgment Act, whether or not there is an underlying state court action pending. Id. at 144; Aetna Cas. & Surety Co. v. Merritt, 974 F.2d 1196, 1199 (9th Cir.1992). This case satisfies this requirement.
 
 
 21
 A second inquiry, however, is whether the district court properly exercised its discretion. See Kearns, 15 F.3d at 143-44.[4] "Whether we retain jurisdiction and proceed to decide the issue before us or whether we remand to the district court and defer our decision until later, we will still ultimately be obligated to exercise our own discretion in considering the propriety of the district court's grant ... of declaratory relief." Robsac, 947 F.2d at 1370. We, therefore, have the choice of remanding or determining the issue in this appeal. We choose to decide the issue now.
 
 In making this decision we must consider
 
 22
 whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding[.]
 
 
 23
 Brillhart v. Excess Ins. Co., 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942).
 
 
 24
 The Daniels action was pending in California state court when American National filed this action in federal district court. However, the federal and state cases are not exactly identical. The Daniels litigation was a class action brought by the limited partners against, among others, the officers and directors of Transcisco, FSI, and PLMI. American National was not a party to that action and could not, under California law, have been joined as a party or had the issue of insurance coverage heard in the Daniels proceeding. See Wyene v. Durrington, 112 Cal.App.2d 821, 822, 247 P.2d 414, 415 (1952); Van Derhoof v. Chambon, 121 Cal.App. 118, 131, 8 P.2d 925, 930 (1932).
 
 
 25
 This, however, does not end the inquiry. In Kearns the insurer's declaratory relief action in federal court was related but not identical to the underlying litigation in state court involving the insured's liability to a third party. In remanding to the district court for a discretionary determination to grant or deny jurisdiction, we did not say that the distinction between the proceedings in state and federal court disposed of the jurisdiction issue. In his separate concurrence Judge Garth did note that the difference between the proceedings and the inability of the insurer to join in the state court proceedings were important factors to consider, but neither he nor the majority held that those facts were dispositive of the jurisdiction issue. Kearns, 15 F.3d at 145. In fact, our precedent and Supreme Court decisions clearly indicate that a number of additional factors must be considered in making such a determination. See, e.g., Brillhart, 316 U.S. at 495, 62 S.Ct. at 1175-76; Robsac, 947 F.2d at 1379-80. Both the Kearns concurrence and the Robsac opinion list a number of other factors that a district court should consider in addition to determining whether the two proceedings are parallel.
 
 
 26
 In a case very similar to that before us, the Sixth Circuit held that a district court should decline to exercise jurisdiction over a federal declaratory judgment suit brought by the insurance company when there was a concurrent state proceeding. Allstate Ins. Co. v. Mercier, 913 F.2d 273 (6th Cir.1990). The Sixth Circuit acknowledged that the two proceedings in question were not parallel in all respects, that the petitioner was not and could not be a party to the state court action. The court concluded, however, that an insurer's inability to join directly in the related underlying tort litigation did not preclude the denial of federal court jurisdiction to the insurer in its separate declaratory relief claim.
 
 
 27
 In addition to other considerations discussed below, the court in Mercier justified its denial of jurisdiction by noting that there was a sufficient parallel in the underlying facts of each case and that a sufficient remedy existed in state court for the insurer:
 
 
 28
 We realize that [the insurer] is not a party in the underlying tort action and cannot be made a party. But [the state] does have a procedure for obtaining a declaration of the rights and other legal relations of an interested party seeking a declaratory judgment.... Thus, [the insurer] could have presented the issues that it brought to federal court in a separate action to the same court that will decide the underlying tort action....
 
 
 29
 It is true that in the present case the federal declaratory judgment action does not parallell[ ] a state court action arising from the same facts in the sense that different legal issues are presented by the pleadings. Nevertheless, the federal action does parallel the state action in the sense that the ultimate legal determination in each depends upon the same facts. And, there is an alternate state remedy by which the legal determination sought in the federal declaratory judgment action may be made on the basis of a well-developed factual record, rather than on the basis of a barren record.
 
 
 30
 Mercier, 913 F.2d at 278-79 (internal citations and quotations omitted; brackets in original).
 
 
 31
 The gist of the court's holding, therefore, is that when an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence involved in a matter pending before a federal court, the state court is the more suitable forum for a petitioner to bring a related claim.
 
 
 32
 The court in Mercier also offered additional rationales for declining jurisdiction which we deem to be relevant to our own considerations. First, like the record in Mercier, the record before us is devoid of facts. At the time the district court made its ruling in the instant case, the facts necessary to resolve this insurance coverage claim could only have been developed through the state court proceeding. The district court could do little in this case but assume the facts as alleged to be true, render a decision based entirely upon those facts as provided by American National, and hope that the facts developed during the state proceeding would be exactly as the federal court assumed them to be in order for the opinion to be of use to the state court.
 
 
 33
 With respect to this type of judicial decision making, the court in Mercier observed that
 
 
 34
 [c]ourts should not be required to decide rights and other legal relations in a vacuum.... Without any factual record, there is a real possibility that the district court's declaration of no coverage would conflict with a state court's determination of the coverage question after being informed of the facts.
 
 
 35
 Id. at 278 (quotation omitted).
 
 
 36
 We find the Sixth Circuit's observations to be appropriate to the instant case. In granting declaratory relief, the district court noted its belief that the case came very close to being an advisory opinion, because the court was being asked to render a decision on what it termed "a hypothetical set of facts." The tentative nature of the district court's decision further underlines the problems involved in exercising jurisdiction over suits like the one before us. The district court's ruling, peppered throughout with conditional statements and littered with words like "may," "possible," and "if," was simply that, "[U]nder a broad reading of the Daniels complaint, the policy could provide coverage[.]" Such a tentative decision about a fact-specific state law claim represents a waste of precious judicial resources and encourages a practice that presses the boundaries of Article III.
 
 
 37
 A declaratory judgment in this case would not terminate the existing controversy, because "the policy exclusions can be applied only in the light of factual determinations that have not been made." Mercier, 913 F.2d at 279. It is for this reason that the district court, after concluding that the applicability of the exclusions depended upon the existence of an independent fiduciary relationship between the limited partners and Hungerford, could not find that such an independent relationship was actually created. Thus, "[t]he proceedings would continue in state court regardless of the federal court's ruling." Id.
 
 
 38
 Another compelling reason exists for vacating the district court's decision in this case, viz., that an alternative remedy exists that is better or more effective for the parties in question. Mercier squarely rejected the argument that the insurer's inability to join the state court action required it to accept jurisdiction, noting that the party in question could have sought declaratory relief from "the same court that will decide the underlying tort action" under the state's own declaratory judgment provision. Id. at 278.
 
 
 39
 A similar state remedy is available to American National in this case. See, e.g., Cal.Civ.Proc.Code Sec. 1060.[5] Nothing in the materials before us indicates that American National could not pursue this claim along with its potential claim for contribution from Hungerford in proceedings before the same state court. See generally Johansen v. California State Auto. Ass'n Inter-Ins. Bureau, 15 Cal.3d 9, 538 P.2d 744, 123 Cal.Rptr. 288 (1975) (en banc). Given that these other legal questions ultimately involve interpretations of state law related to a factual dispute pending before the state court in the Daniels tort litigation, we agree with the Sixth Circuit that "the [state] court would be in a superior position to address the legal issues on which [the insurer] seeks a declaration of rights." 913 F.2d at 278-79.
 
 
 40
 Allowing American National to bring this petition in federal court would simply result in a waste of federal resources at every level of the decision making process. Any other holding, given the facts of this case, would result in the federal district court needlessly analyzing a state law issue that the state court is equally, if not better equipped to decide; it will also lead to the state and federal appellate courts reviewing claims arising from an identical set of facts even though the cases can easily be consolidated if filed within the same court.
 
 
 41
 These considerations are closely related to another, viz., the need to discourage forum shopping. See Brillhart, 316 U.S. at 495, 62 S.Ct. at 1176. We noted in Robsac that, by exercising jurisdiction over a suit that raised the same issues as those in a pending state court action, we would only be encouraging forum shopping in violation of the second Brillhart principle. 947 F.2d at 1373. Because it appears that American National could have brought this action in state court through California's own declaratory judgment provision, we should not endorse its attempt to obtain a federal forum to provide the remedy it seeks.[6] Thus, just as in Mercier, a decision to exercise jurisdiction in this case would only encourage forum shopping, procedural fencing, and the "race for res judicata." 913 F.2d at 279.
 
 
 42
 Finally, the interests of comity strongly support a holding that the district court should not have exercised jurisdiction over this case. The Supreme Court has instructed federal courts to avoid needlessly determining issues of state law. See Brillhart, 316 U.S. at 495, 62 S.Ct. at 1176. In this case, even if the declaratory judgment would clarify the nature of the legal relationship at issue, such clarification would only come at the cost of increasing friction between state and federal courts, and would constitute an improper encroachment on state court jurisdiction.[7] In Robsac, we held that "[c]ourts should generally decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court" unless there are "circumstances present to warrant an exception to that rule." 947 F.2d at 1374. The facts of this case present no compelling justifications for departing from the rule of this Circuit.
 
 CONCLUSION
 
 43
 The preceding analysis presents a number of important concerns supporting a reversal of the district court's decision to exercise jurisdiction over this claim for declaratory relief: our policies of avoiding rendering opinions based on purely hypothetical factual scenarios, discouraging forum shopping, encouraging parties to pursue the most appropriate remedy for their grievance, preserving precious judicial resources, and promoting comity.
 
 
 44
 In view of these considerations, the judgment appealed from is VACATED and the case is REMANDED to the district court with instructions to DISMISS.
 
 
 
 *
 The Honorable Linda Hodge McLaughlin, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Although not directly relevant to the instant appeal, the three companies were PLM Securities, Inc., PLM Transportation Equipment Corporation, and PLM Investment Management, Inc
 
 
 [2]
 The other defendants in the Daniels action were not parties to the bankruptcy proceedings
 
 
 [3]
 Transcisco and the other corporations were not named in this declaratory judgment action
 
 
 [4]
 In Kearns we did not consider this issue because we remanded the case to the district court for this determination. 15 F.3d at 145
 
 
 [5]
 That provision states, in relevant part: "Any person ... who desires a declaration of his or her rights or duties with respect to another ... may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action ... in the superior court ... for a declaration of his or her rights and duties ... including a determination of any question of construction ... arising under ... [a] contract."
 
 
 [6]
 Indeed, because there was not complete diversity in the state court action, a decision to exercise jurisdiction over this case may implicate some of the concerns we raised in Robsac about the troubling effect the exercise of jurisdiction might have upon Congress' attempt to avoid the costs of duplicative and piecemeal litigation by allowing removal only when complete diversity exists
 
 
 [7]
 The friction that might result from two parallel proceedings, both at the district and appellate court levels, is obvious. In addition to creating the appearance that the federal courts are encroaching upon state jurisdiction, the existence of two original and two appellate proceedings necessarily entails a risk that the state and federal courts might reach different conclusions when interpreting the law and facts of the case. Indeed, it is in part for this reason that we make a practice of consolidating related appeals and notifying panels of the existence of pending appeals raising similar issues. See, e.g., Fed.R.App.P. 3(b)