**Eugene RYAN, an Underwriter at Lloyd's of London, on Behalf of The SYNDICATES AND INSURANCE COMPANIES SUBSCRIBING TO POLICY PHP91–4699, Plaintiff,**

v.

**SEA AIR, INC., Defendant.**

**No. A93–522 CV (JKS).**

United States District Court, D. Alaska.

Oct. 16, 1995.

David T. Hunter and Michael K. Nave, Lane Powell Spears Lubersky, Anchorage, AK, for Eugene Ryan.

Kermit E. Barker, Jr., Barker & Hellen, Anchorage, AK, for Sea Air, Inc.

Larry G. Berry, Robertson, Monagle & Eastaugh, Anchorage, AK, for Defendant Charles Monnett and Defendant American Empire Ins. Co.

## ORDER

SINGLETON, District Judge.

This is a declaratory judgment action brought to determine whether coverage exists under a policy of insurance issued by Plaintiff to Sea Air, Inc., for damages allegedly suffered in the crash of a plane overhauled in Sea Air's hanger. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332. This Court granted Plaintiff summary judgment by Order dated April 4, 1995. Docket No. 45. Judgment was entered by direction of the Court on May 31, 1995. Docket No. 50. There is currently pending before this Court a motion for attorney's fees. Docket No. 54. The motion is opposed. Docket No. 63.

Sea Air argues that this Court lacks "jurisdiction" over this case. It anticipates that the appellate court will exercise discretion for this Court and dismiss this case so that it can begin again in state court. Sea Air asks the Court to refrain from awarding attorney's fees. *See, e.g., Wilton v. Seven Falls Co.,* — U.S. —, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). *Employers Reinsurance Corp. v. Karussos,* 65 F.3d 796 (9th Cir.1995), *Am. Nat'l Fire Ins. Co. v. Hungerford,* 53 F.3d 1012 (9th Cir.1995); *Am. States Ins. v. Kearns,* 15 F.3d 142 (9th Cir.1994); *Aetna Cas. & Sur. Co. v. Merritt,* 974 F.2d 1196 (9th Cir.1992); *Continental Cas. Co. v. Robsac Indus,* 947 F.2d 1367 (9th Cir.1991); *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361 (9th Cir.1991); and *compare Allstate Ins. Co. v. Mercier,* 913 F.2d 273 (6th Cir. 1990).[1]

■ After due consideration of the record and with full appreciation of the discretion this Court has to decline jurisdiction and to grant a declaratory judgment, the Court con-

---

1. The Court recognizes that the United States Supreme Court has limited its discussion to situations where there are parallel proceedings in state court which arguably could resolve the issue at hand. There are no parallel state proceedings relevant to this case. Nevertheless, the Ninth Circuit Court of Appeals has taken the view that if an insurer could sue for declaratory judgment in state court, then a federal court abuses its discretion if it entertains such an action. Alaska has adopted a statute authorizing declaratory judgments which is patterned on the federal act. *See* AS 22.10.020(g) which is modeled on 28 U.S.C. §§ 2201, 2202. *Alaska Airlines v. Red Dodge Aviation, Inc.,* 475 P.2d 229 (Alaska 1970).

cludes that it should continue to exercise jurisdiction in this case and grant an award of attorney's fees. *See Wilton*, —— U.S. at ——–——, 115 S.Ct. at 2143–44 (holding that discretion to hear declaratory judgment actions rests with the district court not the appellate court). There is clearly a case or controversy regarding coverage. *See, e.g., Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). To the extent that it is necessary to show that the circumstances of this case warrant an exception to the general rule, operable apparently only in the Ninth and Sixth Circuits, the Court finds that none of the reasons advanced in *Mercier,* 913 F.2d at 278–79 or *Hungerford,* 53 F.3d at 1016–17 apply in Alaska. This Court therefore concludes that this case is governed by *Wilton. See Am. States Ins. v. Kearns,* 15 F.3d 142 (9th Cir.1994) and *Aetna Cas. & Sur. Co. v. Merritt,* 974 F.2d 1196 (9th Cir.1992). In *Robsac* and *Hungerford,* the courts adopted a general rule, suspect after *Wilton,* that virtually denied the district court jurisdiction to hear declaratory judgment cases in insurance cases. They reached that strange conclusion despite the frequent historic availability of that remedy in federal court. *See, e.g.,* 10A Wright, Miller and Mary Kay Kane, Federal Practice and Procedure § 2760 (1983). Before exercising its discretion to accept jurisdiction, this Court must examine the factors discussed by the Ninth Circuit. Upon examination, the Court finds the reasons advanced in the cases upon which Sea Air relies unpersuasive. As the Court shall show, whatever the result should be in major metropolitan areas, a matter about which the Court has no expertise and therefore ventures no opinion, neither the conservation of judicial resources, the avoidance of duplicative litigation, nor the "needless" resolution of state law questions in federal court are reasons to refuse to exercise jurisdiction in this case.[2]

*Robsac,* the seminal case in this circuit for the position Sea Air belatedly advances, rested on two flawed legal assumptions. First, *Robsac* confused the question whether to exercise jurisdiction in declaratory judgment cases with the jurisdictional question whether a case or controversy existed. *See Kearns,* 15 F.3d at 144 (rejecting this view); *see also Aetna Cas. & Sur. Co. v. Merritt,* 974 F.2d 1196, 1199 (9th Cir.1992) ("we know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage"). Second, *Robsac* and *Hungerford* proceed on the assumption that the issue is committed to the discretion of the appellate court not the trial court.

This later view was considered and rejected in *Wilton,* —— U.S. at ——–——, 115 S.Ct. at 2143–44. *Wilton* significantly undermines *Robsac* and *Hungerford.* The Court realizes that the author of *Robsac* and *Hungerford* minimized the significance of this issue in *Karussos,* but when we realize that *Karussos* was argued and submitted on June 9, 1995, and *Wilton* was decided on June 12, 1995, it is understandable that the panel might not have given *Wilton* the attention it deserves. In fact, the *Karussos* court, in an apparent rush to judgment, makes assumptions directly rejected by *Wilton.*[3]

---

**2.** The Court understands that there is dicta in some of the Ninth Circuit cases suggesting that it is an abuse of discretion as a matter of law, an oxymoron, not to dismiss any request for a declaratory judgment in a coverage dispute between insured and insurer whether or not there are parallel cases pending. In contrast, the United States Supreme Court has held that the preferred practice is a stay pending resolution of the parallel proceeding, not a dismissal, and declines to comment at all on how the court should exercise discretion in the absence of parallel proceedings. *See, e.g., Wilton v. Seven Falls, Co.,* —— U.S. ——, —— n. 2, 115 S.Ct. 2137, 2143 n. 2 (we note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, insofar as it assures that the federal action can proceed without risk of a time bar, if the state case, for any reason, fails to resolve the matter in controversy). As we shall see, in Alaska, where the insured and insurer dispute coverage, a tort case will never resolve the matter in controversy. It is difficult to see how following the Supreme Court's preferred procedure can be an abuse of discretion.

**3.** *Wilton* held that discretion rests with the trial court, not the appellate court. Notwithstanding this decision by the Supreme Court, the Ninth Circuit later declined, in *Karussos,* to remand to the district court and to allow the trial judge to exercise discretion as to whether to accept juris-

When we consider the status of this case, it is clear that it would be an abuse of discretion to dismiss this case after judgment has already been entered. First, the issue is discretion, not jurisdiction. Thus, it would appear that the issue is one that can be waived by failing to raise it at an appropriate time. *See, e.g.,* FED.R.CIV.P. 12(b) and (h). Sea Air could have moved to dismiss this action on discretionary grounds when it was first brought. It did not do so. It could also have objected to this Court's exercise of jurisdiction and could have requested that the case be remanded. It did not do that either. Nor did it suggest a stay pending resolution of pending tort claims. Instead, Sea Air filed a counterclaim. Moreover, until the Court ruled against it, Sea Air was content to have this Court resolve the issues. Whether we consider waiver or estoppel, it is clear that Sea Air is in a poor position to complain about this Court's exercise of discretion. The parties' willingness to resolve the issue in this Court suggests that no one was inconvenienced by litigating here rather than in state court. The court houses are a few blocks apart. Both allow ample parking.

Second, there are no parallel proceedings. *See Provident Tradesmen's Bank & Trust*

*Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (pendency of another suit in state court does not bar declaratory relief in federal court if the issues in the declaratory action will not necessarily be determined in the other suit); accord *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) (trial court must carefully inquire into the issues being litigated in state court to determine whether the claims of all parties in interest can be adequately resolved in the pending proceeding in state court).[4] Alaska does not permit a direct action against an insurer in this kind of case. True, Alaska does have a declaratory judgment act patterned on the federal act, but the parties would have to bring a separate proceeding in state court to address these issues. Resolving the matter here does not increase the number of cases or lead to multiplicity of litigation. The situation described in *Robsac* and *Hungerford* therefore has no relation to Alaska.

The assumption in those cases is that a declaratory judgment to determine coverage in a dispute between an insurer and insured regarding a pending tort case against the insured is always premature and in the nature of an advisory opinion until the

diction. The Ninth Circuit, acting consistent with prior circuit authority but inconsistent with *Wilton,* instead exercised its own discretion and refused jurisdiction. Despite the fact that a judgment had already been reached in the federal court and the state court matter was resolved, the panel reversed and ordered dismissal in order to prevent frustration of the principal preventing the district court from assuming "unwarranted" jurisdiction. The panel apparently feared that the state court decisions are frequently resolved first and do not resolve the issues addressed in the declaratory judgment action. This position conflicts directly with *Wilton,* where the Supreme Court specifically pointed out that a stay, rather than dismissal, was to be preferred so that the district court could address, after the state court matter was resolved, any issues not decided in state court. *See Wilton,* —— U.S. at —— n. 2, 115 S.Ct. at 2143 n. 2. It is difficult to see how a course of action "preferred" by the Supreme Court could be "unwarranted."

4. In *Robsac,* as in *Brillhart,* there were parallel proceedings in which identical issues were being litigated. This explains the reference to forum shopping. In both *Robsac* and *Brillhart,* the

party opposing a declaratory judgment sought a stay and attempted to litigate that issue pretrial. Sea Air did not seek a stay in this case. In *Hungerford,* the court recognized that no parallel proceeding existed but suggested that the insurer could use the state's declaratory judgment procedure. Alaska's declaratory judgment statute is patterned on the federal statute and the Alaska courts follow federal precedent in interpreting their statute. Thus, if the general rules governing declaratory judgments would render it inappropriate for this Court to grant a declaratory judgment, then those rules would appear to render a declaratory judgment in state court inappropriate as well. *See, e.g., Alaska Airlines v. Red Dodge Aviation, Inc.,* 475 P.2d 229, 232 (Alaska 1970); *Jefferson v. Asplund,* 458 P.2d 995, 996–1000 (Alaska 1969). More significantly, the *Robsac* and *Hungerford* courts overlook the specific direction in Federal Rule of Civil Procedure 57. "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." FED R.CIV.P. 57. Thus, in determining whether there are parallel proceedings, we must address those actually in existence, not those that could have been brought but were not. *See* 10A WRIGHT, MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: Civil 2nd § 2758 (1983).

facts are determined in the tort litigation. While that might be true elsewhere, in jurisdictions with which the authors of those opinions are most familiar, it is not true in Alaska. The Alaska Supreme Court recognizes that where a dispute over coverage exists between the insured and insurer regarding a pending tort case, the insurer will be required to provide a defense until the dispute is resolved. If the tort case can influence the resolution of the coverage dispute then the parties are in a conflict of interest and the one who chooses the defense can maneuver to have the tort case resolved in a manner favorable to the party controlling the defense. The Ninth Circuit has recognized this problem as well. *See, e.g., Bell Lavalin, Inc. v. Simcoe and Erie,* 61 F.3d 742, 745–48 (9th Cir.1995). The Supreme Court of Alaska has resolved this problem by concluding that where, as here, there is a dispute over coverage, the tort litigation will not determine any relevant fact, and the parties, unless they settle their dispute, will always be required to litigate in a separate proceeding, *i.e.,* a declaratory judgment proceeding. *See Chi of Alaska v. Employers Reinsurance,* 844 P.2d 1113, 1119 (Alaska 1993) (where insured and insurer have a coverage conflict, issues determined in tort action may be re-litigated in declaratory judgment action) (citing, *inter alia,* Restatement (Second) Judgments § 58). Consequently, the basic assumption of the *Robsac* court has no bearing on actions in Alaska.

Once it is clear that in Alaska, in every case of a conflict of interest between insurer and insured over coverage, a declaratory judgment action will be necessary to resolve the dispute, and the outcome of the tort suit will provide no guidance, it becomes clear that this situation is the classic situation that declaratory judgments were intended to address. The declaratory judgment will serve a useful purpose in clarifying and settling the legal relations in issue—most importantly, who pays for the defense in the tort action. It will also terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding, *i.e.,* whether Sea Air's decision to reject the specific coverage that would have applied to the accident in this case and obtain and pay only for premises liability should be given force and effect. Borchard, Declaratory Judgments, 299 (2d ed. 1941); 10A WRIGHT, MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2759.[5]

The parties recognized from the outset that this case would be resolved on a dispositive motion. It did not involve a lengthy trial.[6] Resolving it here did not require this Court to decide complicated issues of unsettled Alaska law. If it did, the Alaska Supreme Court has established a procedure for certifying issues of first impression to it. *See* Alaska Appellate Rule 407. The Court has successfully certified insurance coverage issues to that court in the past. The Alaska Supreme Court refuses to accept certification when, in its view, its prior decisions foresha-

---

**5.** In *Robsac,* the court was also concerned that a declaratory judgment might not finally resolve the issue where there was not complete diversity between all the parties so that under applicable state law the injured party might, after obtaining a judgment against the insured, be able to litigate coverage anew. That concern is not present in this case since there is complete diversity and the injured party was joined and disclaimed any interest in the coverage dispute. Even if this were not the case, it would appear under Alaska law that the injured party would have no action against the insurer unless and until it obtained judgment against the insured. Its rights would be those of the insured as of that time. Thus, an earlier declaratory judgment, which would not be advisory under Alaska law, would be binding on both the insured and its privies and assigns. *See, e.g., Evron v. Gilo,* 777 P.2d 182, 187–88 (Alaska 1989); *O.K. Lumber v. Providence Wash-*

ington Ins., 759 P.2d 523, 525–26 (Alaska 1988); *Severson v. Estate of Severson,* 627 P.2d 649, 651 (Alaska 1981).

**6.** It did, however, involve a significant expenditure of lawyer and judicial time and effort. One of the reasons for having trial judges exercise discretion regarding the grant or withholding of declaratory relief is that they are in the best position to understand their respective case loads and that of their counterparts in the state system. In this district, trials, civil and criminal, are few. The bulk of the active federal district judge's time is spent reviewing records and resolving dispositive motions such as the one in this case. This Court did spend a great deal of time reviewing the record and the law in this case prior to granting the motion, but it was time the Court had available for that purpose.

dow a proper result.[7] The Alaska Supreme Court has refused to accept certification in other declaratory judgment cases regarding coverage disputes when this Court saw an arguably novel issue and erred on the side of certification, but the supreme court was satisfied that the law was established. This Court was satisfied that the Alaska Supreme Court would not accept certification in this case because it would not view it as presenting any novel questions. Therefore, the Court did not attempt to certify.

Some of the Ninth Circuit cases express concern that federal judges not trample on state judges' sensibilities by taking cases that the state judges would prefer to resolve.[8] Certainly this Court should hesitate to inject itself into matters in which the state is a party and where matters of great public policy are being litigated. The state is not a party to this action and no significant policies are in dispute. It is important to stress that

regulation of the insurance industry is not an issue in this case. Closely related is the concern that accepting declaratory judgment actions will clog the federal court's docket with cases that could be more quickly resolved in state court. Here, there is a clear distinction between state and federal court, but this presents a reason for keeping the case, not rejecting it. When I was on the State superior court, I had a civil caseload of up to 1,000 cases. Today, I have about 250.[9] Then I had one law clerk, today I have two law clerks and an extern.[10] In short, in state court I had more cases and fewer resources. Necessarily, a federal judge in this district will have more time to spend deciding cases of this kind than will his counterpart in state court. This should assure the parties a more timely resolution of their dispute thus serving the primary goal of declaratory judgments; expeditiously addressing and resolving uncertainty. It is likely that a resolution

7. Sometimes the Alaska Supreme Court declines certification of novel issues, and at the same time declines to hear petitions for review from the state superior court in order to see how courts at the trial level deal with a novel issue before the Alaska Supreme Court finally resolves it. It is frequently valuable for an appellate court to have the benefit of lower court decisions to assure that the higher court understands all implications of its decision. Thus, when faced with complicated questions posed by a voter initiative dealing with tort reform, the supreme court declined to act until it had seen how other courts dealt with the problem. In that case, the state and federal courts split, not along state-federal lines, but on the merits. One federal judge and one state judge went one way, one state judge and one federal judge went the other. *See Benner v. Wichman*, 874 P.2d 949, 955–58 (Alaska 1994), reconciling and resolving the dispute between *Carriere v. Cominco Alaska, Inc.*, 823 F.Supp. 680 (D.Alaska 1993), and *Robinson v. U–Haul Co.*, 785 F.Supp. 1378 (D.Alaska 1992). Thus, in resolving complicated issues of Alaska state law, our state courts welcome the involvement of the federal courts exercising diversity jurisdiction, but of course feel quite free to disagree.

8. Many of the issues discussed in the cases regarding accepting or declining jurisdiction over declaratory judgment actions appear more relevant to major metropolitan areas such as San Francisco and Los Angeles than to Anchorage, Alaska. Where state and federal judges are strangers to each other, it is possible that jealousies exist. I believe that I can speak from experience in saying that there is no institutional rivalry here. I was a Superior Court judge for ten years and a Court of Appeals judge for almost ten

years. Since our state court is an integrated court, I was frequently privileged to sit with the Alaska Supreme Court. After joining the federal bench, I remained active in our Federal/State Judicial Council and co-chair its Gender Equality Task Force. Committees of the state and federal court recently worked closely together in developing common rules governing discovery and in bringing the District Court's local rules into closer conformity with the rules of practice in the state courts. I was closely involved in that endeavor. In my dealings with the state courts, the question of federal-state comity is frequently discussed. I have never heard a state judge of any level of court complain that this Court took too many insurance cases. In fact, the only complaint, in jest, is that it remands too many cases to the superior court and certifies too many cases to the appellate courts.

9. The Alaska Judicial Council is considering a review of the progress of civil cases in state and federal court. This study would complement the work of our local Civil Justice Reform Act committee. Until it is completed, it is difficult to compare respective caseloads weighted for complexity and litigant investment. I am not suggesting that my weighted caseload in state court was five times what it currently is. I think a better estimate would be about double.

10. This Court is also aided by two full time magistrate judges and a number of part time magistrate judges who are willing to preliminarily review dispositive motions in civil cases. *See, e.g.*, Local Magistrate Rule 4. No comparable assistance exists in state superior court.

of the coverage issues will also speed resolution of the tort case since each party's settlement position will be enlightened.[11]

In short, there is no good reason to abandon this case at this late date after a judgment has already been reached and force a new judge to become familiar with the record. Such a decision would simply increase the cost and delay with no compensating benefit. In the exercise of my discretion, I decline to decline jurisdiction. I see no "reason" to sacrifice practicality to ideology. Such a sacrifice would conflict with the purpose for establishing authority to grant declaratory judgments.

 The next inquiry involves determining an appropriate attorney fee. Alaska follows the English Rule by virtue of which the prevailing party always recovers a portion of its fees from the losing party. *See, e.g.,* ALASKA R.CIV.P. 82. This procedure is binding in diversity cases brought in this Court. D.Ak. LR 54.3; *Klopfenstein v. Pargeter,* 597 F.2d 150, 151 (9th Cir.1979). Where an insurance company prevails in litigation with the insured, the Alaska Supreme Court has approved significantly larger awards than is requested in this case. *See, e.g., O.K. Lumber,* 759 P.2d at 528 (approving an award of $25,000). In this case, we know the total hours claimed, but we do not have a breakdown of the hourly charges for each attorney whose time was billed. Nor did Ryan file a reply to Sea Air's claim that Ryan was charging for work unrelated to this case. Historically, the Alaska courts have not required trial courts to audit attorney fee requests, but current amendments to Rule 82 suggest that the Court should review the billings before applying the formula.

**IT IS THEREFORE ORDERED:**

Sea Air's motion to dismiss or stay, contained at Docket No. 63 within its opposition to Ryan's request for attorneys fees, is **DENIED**. Ryan is entitled to a reasonable attorney fee but should file a reply to Sea Air's response on or before **October 30, 1995.** The Court will rule promptly thereafter.

---

11. Those cases that wish to ignore *Wilton* and adopt a general rule precluding declaratory judgments in federal court where the state provides a procedure for declaratory judgments in essence disapprove of diversity jurisdiction. Despite significant efforts by those who hold this view, Congress has declined to eliminate or significantly modify that jurisdiction. It is possible that those judges whose entire legal experience is in major metropolitan areas where the courts are inundated with criminal drug cases and prisoner actions pursuant to 42 U.S.C. § 1983 may seek relief where it can be found and wish to eliminate diversity cases where possible in order to

obtain breathing room. In this District, our caseload is quite manageable, our U.S. Attorney is responsible, our prisoners are well educated in the law, and we have an excellent state system to redress prisoners' grievances. Consequently, while I hesitate to speak for all of my fellow judges, I believe the consensus here is that diversity jurisdiction is a good thing, that diversity cases present a welcome change of pace, and far from creating comity problems actually increases rapport between state and federal judges by giving us something to complain about together at yearly judicial conferences.