**FIRST STATE INSURANCE CO.,**
a corporation, Plaintiff,

v.

**CALLAN ASSOCIATES, INC., a corporation, and Does 1 through 20, inclusive, Defendants.**

No. C–94–2532 WDB.

United States District Court,
N.D. California.

Feb. 2, 1996.

James B. Wright, Buchalter, Nemer, Fields & Younger, San Francisco, CA, for Plaintiff, First State Insurance Co.

Cooley Godward Castro Huddelson & Tatum, San Francisco, CA, for Defendant, Callan Associates, Inc.

## ORDER DECLINING TO EXERCISE JURISDICTION

BRAZIL, United States Magistrate Judge.

### INTRODUCTION

Earlier this year, Callan Associates, Inc. (hereafter Callan) filed a motion asking District Judge Weigel to decline to exercise jurisdiction over the declaratory relief action that First State Insurance Company (hereafter First State) had filed some nine months earlier. In April Judge Weigel decided to decline jurisdiction over two of the bases on which First State based its claim that it had no liability under the subject insurance policy, but decided to exercise his discretion to retain jurisdiction over the third basis for First State's position, namely that Callan allegedly had "failed to disclose the possibility of litigation on its application for the Policy[1] and that Callan failed to give timely notice[2] to First State regarding the KPERS litigation." Memorandum and Order, filed April 13, 1995, at 7.

The result of Judge Weigel's decision is to send two of the three possible bases for a finding that First State has no liability to another forum—presumably the Superior Court for the City and County of San Francisco.[3] If First State were to prevail on the claim that would remain here under Judge Weigel's ruling there would be no need to litigate the remaining two possible bases for the relief First State pursues, but if Callan were to prevail here, First State would be constrained to proceed in a separate action in a California state court. Since I have no idea which party is likely to prevail on the merits of the "failure to disclose" theory, I must assume that there is a fifty-fifty chance that retaining jurisdiction here over that claim will result in First State and Callan having to litigate the other two possible bases for a finding of no-liability in a California court. Thus, by retaining jurisdiction here over the "failure to disclose" claim, I would create a non-de minimis risk that Callan would be forced to litigate matters related to the underlying claim in *three* different courts. One way to frame the issue I address in this opinion is to ask whether exposing Callan to that risk is justified.

### WHAT IS THE APPLICABLE TEST?

The principal reason that I am addressing these matters at all is that three relevant appellate court opinions were published *after* Judge Weigel issued his rulings in April. One of those opinions was issued by the Supreme Court of the United States, *Wilton v. Seven Falls Co.*, —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (June 12, 1995). The United States Court of Appeals for the Ninth Circuit is the source of the other two pertinent opinions, one of which preceded *Wilton* by about six weeks, *American National Fire Ins. Co. v. Hungerford*, 53 F.3d 1012 (9th Cir.1995), and the other of which followed *Wilton* by about three months, *Employers Reinsurance Corp. v. Karussos*, 65

---

1. The parties appear to agree that the alleged omission occurred on the 1992 application to renew a policy that First State had first issued in 1989. *See* Callan Associates Inc.'s Supplemental Brief Re Jurisdiction, filed January 11, 1995, note 1 at p. 2.

2. Apparently there is no separate contention based solely on the timing of the notice of the formal litigation. *See* Callan Associates Inc.'s Supplemental Brief re Jurisdiction, note 1, at p. 2.

3. First State contends that it is immune, under the Constitution, from personal jurisdiction in the Kansas state courts, where the underlying litigation against Callan is pending.

F.3d 796 (9th Cir.1995). Judge Weigel did not have an opportunity to consider the implications of these clearly relevant cases. It is to that task that I now turn.

The relationships between these three cases are complicated, but a full explication of those relationships is not necessary here. It is necessary to decide, however, whether *Karussos,* the most recent of these pronouncements, articulates the law that I must apply here. First State contends that *Karussos* is irreconcilable with *Wilton* and that I must follow *Wilton,* which was decided by the highest court. Without trying to reconcile these two opinions, Callan contends that I am required to apply the test announced in *Karussos.*

For two reasons, one of which is compelling, I have decided that I must apply the *Karussos* test. That compelling reason is that I would threaten the reality of law itself if I were to take it upon myself to determine whether the *Karussos* court had correctly understood *Wilton* and, if I concluded that it had not, were then to strike out on some doctrinal path that I felt was more in keeping with *Wilton* than the path chosen by the Court of Appeals for the Ninth Circuit. I sit as a trial court. I am duty bound to apply the law as the court that sits above me declares the law to be—even if I vehemently disagree with it. If every trial court felt free to determine whether clear pronouncements of the law by the court of appeals above it were "incorrect" (meaning, here, irreconcilable with earlier pronouncements by the Supreme Court), we would be faced with the prospect of complete doctrinal disarray. We would be working, in essence, in a lawless system, a system of men, not laws. My oath of office requires that I follow *Karussos.*

I hasten to emphasize that it is indisputable that the *Karussos* court was fully aware of *Wilton.* The *Karussos* opinion discusses *Wilton* in three separate places. Obviously, the unanimous panel of Ninth Circuit judges who decided *Karussos* believed that the doctrine they announced there was consistent with *Wilton.* Since they are my doctrinal bosses, it is not my place to second guess them—or at least to use such a second guess to justify not applying the law they have articulated.

A second, much less firm basis for my decision to apply the *Karussos* test here is that I am not positive that it is irreconcilable with *Wilton.* At least at one level, there appears to be tension between the two opinions. *Wilton* appears to hold that when district courts are called upon to decide whether to retain jurisdiction over claims brought under the Declaratory Judgment Act they should do so in a straightforward exercise of discretion, whereas *Karussos* creates, at least with respect to actions brought by insurance companies, a substantial presumption against retaining jurisdiction under the Act, at least in some circumstances. Under *Karussos,* in other words, the district court's exercise of discretion is not straightforward, but is cabined or skewed substantially by the presumption against retaining jurisdiction.

A closer examination of *Wilton,* however, suggests that there might not be as much tension between the two opinions as there at first appears to be. The thrust of *Wilton* was not against a presumption in favor of declining jurisdiction, but against a presumption in favor of keeping jurisdiction. In other words, the *Wilton* court wanted to make it clear that district courts were much freer to reject jurisdiction under the Act than some trial courts had felt in the past. The "exceptional circumstances" test that the Supreme Court attacked in *Wilton* had created pressures on district courts to retain jurisdiction over declaratory relief actions; some courts of appeal had held that trial courts could decline jurisdiction over such cases only if "exceptional circumstances" justified the declination. Rooting its decision in *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), the *Wilton* court made it clear that no such presumption in favor of retaining jurisdiction over such matters was appropriate.

Significantly, the *Wilton* opinion quoted from a portion of *Brillhart* that stated that "'[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by.

federal law, between the same parties." *Wilton,* —— U.S. at ——, 115 S.Ct. at 2140 (*quoting Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1175–76). Thus *Wilton* seemed to point out that *Brillhart,* in some circumstances, in effect created a presumption against the exercise of jurisdiction under the Act. The procedural circumstances were different in *Wilton* (the underlying state court action was already over, and in it the same issues had not been litigated between the same parties) than they were in *Brillhart,* and the *Wilton* court did not go so far as to create a presumption against retaining jurisdiction under the Act. But *Wilton*'s use of *Brillhart* at least leaves it open to argument that the high court would not reject the creation of similarly operating presumptions against retaining jurisdiction in circumstances not squarely reached in *Brillhart.* Finally, I note that *Karussos* also purports to find the roots of the test it applies in the *Brillhart* opinion. If *Wilton* and *Karussos* are rooted in the same source, the odds may improve that the high court could find the two opinions reconcilable.

For all these reasons, but principally the first stated, above, I hold that I am bound to apply the *Karussos* test.

## APPLICATION OF *KARUSSOS* TO THE CASE AT BAR

■ In a setting that is similar to the setting we consider here, the *Karussos* panel clearly stated that federal district courts must decline jurisdiction over a declaratory relief action brought by an insurance carrier (where the rule of decision would be supplied by state law) unless the carrier can show that "there are 'circumstances present to warrant an exception' to the general rule that the action belongs in state rather than federal court." *Karussos,* 65 F.3d at 799 (*quoting Hungerford,* 53 F.3d at 1019, that opinion quoting *Continental Casualty Co. v. Robsac Ind.,* 947 F.2d 1367, 1374 (9th Cir.1991)).

■ First State contends, at the outset, that *Karussos* is not applicable because this is not a case about insurance coverage, but a straightforward effort to rescind a commercial contract based on fraud. This is a distinction without a difference; a lawyerly but ultimately unpersuasive effort to draw a line where none exists. Accepting this effort to distinguish *Karussos* would risk severely limiting the reach of the doctrine there announced—and doing so without reason. Certainly there is no hint in *Karussos* itself that would suggest any such intention by its authors. Moreover, one of the bases on which the carrier sought declaratory relief in that case was virtually identical to the basis in issue here: that the insured knew of the claims against it before the carrier's policy went into effect—and thus that the carrier had no duty to defend. *Id.* at 798. Nothing in the *Karussos* opinion even obliquely intimates that this kind of theory is more appropriately characterized as 'rescission of a commercial contract' than a dispute over insurance coverage. And First State has not presented any authority that indicates that California state law that regulates insurance does not reach or is not concerned with efforts by carriers to deny coverage on this ground. It is hard to imagine why state insurance regulators would profess no interest in the processes by which insurance policies are acquired (e.g., filling out applications) or in carriers' efforts to use alleged misbehavior in those processes to deny coverage.

■ Having failed to persuade me that *Karussos* does not apply, has First State met its burden of showing that exceptional circumstances justify a departure from the general rule against retaining jurisdiction? The answer is no. Just as in *Karussos,* First State has "failed to explain how the case before us may be distinguished from the general run of insurance coverage cases in which the exercise of a district court's jurisdiction would be unwarranted." *Id.* at 799. This follows, in part, from First State's failure to distinguish meaningfully the situation in *Karussos* from the situation in the case at bar.

The *Karussos* court squarely rejected an argument that exceptional circumstances existed when the underlying state court proceeding had been concluded, so that there was no pending state court proceeding (at least by the time the court of appeal re-

viewed and reversed the district court's assumption of jurisdiction). It is clear from both *Karussos* and *Hungerford* that the presumption against federal jurisdiction in situations like these does *not* turn on whether there is a pending state court proceeding in which the coverage issues could be litigated at the same time the liability of the insured is litigated. As the *Hungerford* court pointed out, the carrier in that case "was not a party to [the underlying class action] and could not, under California law, have been joined as a party or had the issue of insurance coverage heard in [that underlying state court case]." *Hungerford,* 53 F.3d at 1016.

Thus, it is clear that the circumstance that consists of the carrier being forced to initiate a separate proceeding in a state court to determine its rights under its policy is not deemed "exceptional" by the Court of Appeals for the Ninth Circuit. So the fact that declining jurisdiction here would compel First State to file a new action in the Superior Court in San Francisco, and thus would slow, perhaps by a year or so, the parties' access to a ruling on the "failure to disclose" theory, does not justify retention of jurisdiction.

In fact, the burdens on the litigants (and the judiciary) that the Court of Appeals was willing to impose in both *Karussos* and *Hungerford* were greater than the burdens First State points to here. In both of those cases the federal district court had retained jurisdiction and had permitted the parties to litigate at least substantial coverage issues to judgment. So the effect of the appellate court's ruling that jurisdiction should have been declined was not only to compel the parties to launch their litigation afresh in a California state court but also to force the parties to incur the expense of litigating the same matters twice.[4] If those circumstances are not exceptional, it is hard to understand how the situation in the case at bar could be. In the case at bar we have not litigated the "failure to disclose" theory to judgment—so declining jurisdiction here will impose less on the parties. Moreover, because Judge Weig-

el already has ruled that two other possible bases for denying liability must be litigated in state court, the risk of imposing needlessly on the parties in our case is much less than it was in *Hungerford* or in *Karussos.* Similarly, declining jurisdiction at this juncture, some five months before the scheduled trial date, will result in less waste of 'precious' judicial resources than occurred in either of the matters decided so recently by the Ninth Circuit.

First State also suggests that there is no overlap between the matters that would be litigated here and the matters that would be litigated in the underlying state court action in Kansas, and that that fact constitutes an "exceptional circumstance" justifying retention of jurisdiction here. *Karussos* addressed and rejected a similar argument—in part by reaching beyond the narrow issue on appeal and examining all of the theories on which the carrier was trying to escape liability. Given that approach, it may be appropriate to consider the relationships not only between the one claim that would remain here and the underlying Kansas case, but also the relationship between that state court proceeding and the other two bases for denying liability that First State would press in a California court if it lost here. Judge Weigel already has ruled that there is substantial potential overlap between the other two bases for trying to escape liability and the Kansas state court action—and it was that overlap, principally, that led him to dismiss those two First State claims. *See* Memorandum and Order, filed April 13, 1995, at 4–5.

There also may be some overlap between the two theories Judge Weigel dismissed and the "failure to disclose" theory that he decided, in an earlier doctrinal environment, could be litigated in this court. In the two already dismissed theories, the principal target of inquiry will be on whether Callan's people acted with states of mind more culpable than negligence in their relations with KPERS, e.g., were they knowingly dishonest, intentionally deceitful, wilfully indifferent to their obligations to their client, etc. First State

4. In *Hungerford,* the district court had ruled against the carrier and in favor of the insured on the coverage issues, so the carrier presumably

was pleased to have a second opportunity to litigate those issues. *Hungerford,* 53 F.3d at 1014.

will be pressing, at least in part, a roughly similar theme when it litigates the "failure to disclose" theory: that Callan's people were well aware of the likely litigation and decided self-consciously not to disclose it. While the object of the alleged deceit is different (First State instead of KPERS), and while the time frames may appear not to overlap, it is not clear that some evidence about the state of Callan's self-consciousness in its dealings with KPERS would be irrelevant to determining the state of Callan's mind in its dealings with First State.

Nor is it as clear as First State contends that there is no evidentiary connection between the "failure to disclose" theory and the underlying litigation in Kansas. It is at least possible that exploring Callan's knowledge of possible claims against it by KPERS will require some exploration both of Callan's dealings with KPERS and Callan's knowledge of both what KPERS knew and what KPERS felt about those dealings.

Moreover, the *Karussos* opinion makes it quite clear that decisions about whether to retain jurisdiction over claims in this kind of setting should not be dictated by the extent of the overlap between the proposed federal court matter and the related state court proceedings. In fact, by insisting that there is a presumption that jurisdiction should be declined in insurance coverage cases *generally,* and by stating clearly that *"Hungerford* applies whether or not there is a similarity of issues," the Court of Appeals seems to have relegated this factor to a modest (perhaps at best) analytical role. In other words, it appears that the *other* policy considerations that underlie the *Karussos* rule are sufficient, in the mind of the Court of Appeals, to compel the conclusion that even a strong possibility that there might be little evidentiary overlap between the federal and the state proceedings does not, by itself, constitute an exceptional circumstance justifying retention of jurisdiction.

First State's other proffered bases for a finding of exceptional circumstances are not persuasive. I do have a concern about forum shopping in this kind of case, especially after Judge Weigel dismissed two of the three alleged bases for denying liability but the carrier pressed to keep the one remaining theory here instead of consolidating it with the other two theories in *one* state court proceeding. It is clear that a California court is the most appropriate forum to adjudicate the issues on which First State's request for relief turns.

Moreover, as noted above, retaining jurisdiction over the one claim left here by Judge Weigel clearly would create a substantial risk of wasting both party and judicial resources: if First State were not to prevail in this court on that claim, it would proceed with yet another suit in state court on the two other alleged bases for denying coverage. Pressing forward with all three bases in one action would be less wasteful. Only one judge and clerk would be required to learn the case, and the inevitable redundancy in party preparation and presentation, even if not huge, would be avoided altogether. Finally, we promote comity when we defer to state courts on matters of state law, even if (as First State unpersuasively argues) those matters would not be classified as involving "coverage".

For the reasons set forth above, First State has failed to meet is burden of showing that there are in this case "exceptional circumstances" that would justify departing from the general rule that federal courts should decline jurisdiction over disputes between insurance companies and their insureds in which the rule of decision will be provided by state law. Because First State has failed to meet its burden, I hereby ORDER that the one remaining claim by First State be DISMISSED.

In entering this Order, I am assuming that Callan will promptly dismiss its related counterclaim for bad faith. Should Callan fail to do so, there might be a need to revisit the decision I have announced here.

IT IS SO ORDERED.