**MUNICIPALITY OF ANCHORAGE,**
Plaintiff,

v.

**State of ALASKA and Michael A. Barton, Defendants.**

No. A05–0011 CV (JKS).

United States District Court,
D. Alaska.

June 14, 2005.

## ORDER

SINGLETON, District Judge.

The Municipality of Anchorage (the "Municipality") sues the State of Alaska and Michael Barton, the State Commissioner of Transportation, alleging that certain legislation adopted by the Alaska Legislature regarding the spending of federal highway funds violates federal law and impairs a contract between the State and the Municipality adopted in conformity with federal law. The parties refer to this legislation by the Senate bills that lead to its enactment, specifically Senate Bill 260 and Senate Bill 71. The Municipality claims that the contract provided for a managing board in which authority was shared between appointees of the Municipality and appointees of the State. According to the Municipality, the legislation

changes the balance of power in a manner unfavorable to the Municipality without the Municipality's agreement, which it contends was required by federal law for any modification of the contract. In addition, SB 71 allegedly determines how large a percentage of federal funds may be expended for "enhancements," while the Municipality contends this to be a decision that the contract gives to the management.

The Municipality seeks primarily equitable relief. Specifically, it wishes to enforce the contract between the State and the Municipality, for a declaratory judgment that the challenged legislation operated to breach the contract, and for an injunction barring enforcement of the statute. The Municipality contends that this Court has federal question jurisdiction. *See* 28 U.S.C. § 1331. The parties have not discussed this Court's discretion to grant a declaratory judgment. *See* 28 U.S.C. §§ 2201, 2202.

## PROCEEDINGS TO DATE

The Municipality sought a preliminary injunction barring enforcement of the contested legislation. *See* Docket Nos. 7 (Mot.); 21 (Opp'n); 30 (Reply). The State sought dismissal on the ground of subject matter jurisdiction, relying on its sovereign immunity under the Eleventh Amendment to the United States Constitution as to all claims against the State and all claims against Barton in his official capacity, except to the extent the Municipality seeks an injunction against future violations of federal law. *See generally Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The State seeks summary judgment on the other claims brought by the Municipality. *See* Docket Nos. 18 (Mot. to dismiss); 19 (Mot. for s.j.); 26 (Opp'n to mot. to dismiss); 28 (Opp'n to mot. for s.j.); 29 (Reply on mot. to dismiss).

This Court denied the motion for preliminary injunction. *See* Docket No. 31. It reasoned that the parties appeared to agree that the deadline for compliance with the challenged legislation is not until July 1, 2005. *See* 2004 Alaska Sess. Laws 119, sec. 5. Consequently, no irreparable injury could occur prior to that time. This Court expected to decide this case at this level well before that date. The Court recognized that either party is likely to appeal an adverse decision and that the time necessary for an appellate decision cannot be predicted. Consequently, the Court denied the motion for preliminary injunction at this time without prejudice to (1) its renewal if the Court has not decided the merits of this action before the effective date of the legislation, and (2) any party's motion for a stay on appeal, which will be decided by the same standards that govern a motion for preliminary injunction. *Lopez v. Heckler*, 713 F.2d 1432, 1435–36 (9th Cir.1983). At the time it decided this motion, the Court assumed that any appeal would be to the Ninth Circuit Court of Appeals. It never considered whether undecided issues of Alaska state law would need to be certified to the Alaska Supreme Court pursuant to Alaska Rule of Appellate Procedure 407; a possibility that will be discussed hereafter. The Court heard oral argument on May 23, 2005, and at the end of the hearing took the matter under advisement. The Court is now prepared to decide the case.

## DISCUSSION

The parties have substantially narrowed the Eleventh Amendment issue in their briefing and at oral argument. It appears that both parties agree that the State is generally immune from suit by a Municipality in federal court except as provided for in *Ex Parte Young*. Further, both parties seem to agree that Congress has not expressly abrogated sovereign immuni-

ty to permit this action and probably could not do so because it is not implicated by the Fourteenth Amendment to the United States Constitution. *See generally Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Their dispute is limited therefore to the following issues. First, the Municipality argues that a state that accepts federal highway funds—under a statutory scheme that contemplates a written agreement or contract between the state and a municipality to govern expenditure of the funds—impliedly waives sovereign immunity to permit an action in federal court to resolve disputes over the terms of the contract and its enforcement. *Compare Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) *with Cabazon Band of Mission Indians v. Wilson,* 124 F.3d 1050 (9th Cir.1997), *Premo v. Martin,* 119 F.3d 764 (9th Cir.1997), and *Ward v. Ackroyd,* 344 F.Supp. 1202 (D.Md. 1972). Second, the parties disagree regarding the extent to which *Ex Parte Young* applies to allow the Municipality's claims to proceed in federal court. Related to the second point is the issue of whether the Municipality's claim—that the legislation in question results in a breach of the Anchorage Metropolitan Area Transportation Solutions ("AMATS") agreement—must be decided under state contract law or federal law governing highway funds.

■ Having heard oral argument from the parties, the Court concludes that the Eleventh Amendment bars an action in this Court on Counts I, III, and V. The Court is satisfied that Counts I and III are predicated upon an alleged past breach of the AMATS agreement and that Count V properly construed alleges as its gravamen an anticipatory repudiation of that contract. To the extent that *Ward v. Ackroyd,* 344 F.Supp. 1202 (D.Md.1972), would have found a waiver of the Eleventh Amendment in the State's acceptance of highway funds, the subsequent decision of the United States Supreme Court in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), establishes that no waiver occurred here.

The Court is thus left with the Municipality's request for a declaratory judgment and injunction pursuant to *Ex Parte Young.* The Municipality argues that SB 71 and SB 260 violate the United States Constitution, Article I, § 10, clause 1, which provides that "No State shall … pass any … Law impairing the Obligation of Contracts." Senate Bill 260 allegedly violates federal law by changing the composition and appointment of the members of the Metropolitan Planning Organization ("MPO"), which in this case is the policy board of the AMATS Board. The Municipality also contends that SB 71 violates federal law by restricting expenditures for transportation enhancements.

■ At the outset, it is clear that the Municipality has not shown that Congress intended to provide it a private cause of action in federal court to enforce its rights under 23 U.S.C. § 134 and its implementing regulations. *See, e.g., Gonzaga Univ. v. John Doe,* 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) (discussing standards governing inferring a private right of action in a federal statute). Section 134 does not expressly provide for a private right of action to enforce its provisions against either the State or the federal government. The only direct reference in the statute to judicial review denies it. *See* 23 U.S.C. § 134(f)(1), (2) (setting out the factors that the MPO shall consider but providing that failure to consider any factor shall not be reviewable in any court). The case law seems to hold that there is no private cause of action to enforce § 134 or the regulations adopted pursuant to it. *See, e.g., Allandale Neighborhood Ass'n v. Austin Transp. Study*

*Policy Advisory Comm.*, 840 F.2d 258, 267 (5th Cir.1988); *Buckingham Township v. Wykle,* 157 F.Supp.2d 457, 465 (E.D.Pa. 2001). Consequently, the Municipality's claims regarding compliance with § 134 and its regulations are not cognizable and cannot provide the predicate for an injunction or declaratory judgment.

■ Whether the Municipality has a cognizable claim that the challenged legislation constituted an unlawful impairment of the AMATS contract under Article I, § 10, clause 1 of the United States Constitution is a more difficult question. *See generally General Motors Corp. v. Romein,* 503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992); *United States Trust Co. of N.Y. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). A court addressing a Contract Clause claim must address three issues: (1) whether there was a contract; (2) whether it was impaired; and (3) whether the impairment was substantial. *General Motors,* 503 U.S. at 186, 112 S.Ct. 1105. Here, it is undisputed that the Municipality and the State, through its governor, entered into a contract. The second question, however, requires more analysis.

■ Impairment has two elements: (1) the State must breach the contract, and (2) the statute that constitutes the breach must deprive the plaintiff of any state remedy. *Univ. of Hawaii Prof'l Assembly v. Cayetano,* 183 F.3d 1096, 1102–1104 (9th Cir.1999). The Eleventh Amendment prevents the Municipality from suing the State for breach of contract damages in state court. It does not prevent the Municipality from suing the State on a state cause of action at law or in equity in state court. Sovereign immunity for contract claims against the state was expressly waived in the Alaska Constitution. Alaska Const. Art. II, § 21; Alaska Stat. 09.50.250; *see also State v. Haley,* 687 P.2d 305, 318 (Alaska 1984). Since the Munici-

pality may sue the State in state court for breach of its contract, the contract has not been impaired under federal constitutional law, unless SB 71 or SB 260 expressly, or by implication, eliminate the Municipality's remedy. Neither statute addresses remedies, however, and nothing in either statute implicitly impairs any remedy the Municipality would have under state law. Thus it is not necessary to determine in this proceeding whether the legislation does in fact breach the AMATS agreement. Alaska views contracts as incorporating the terms of existing law that, given the history of AMATS, would include the provisions of § 134.

■ This Court's conclusion that this case belongs in state rather than federal court finds support in the authorities discussing the discretionary nature of this Court's declaratory judgment jurisdiction. United States district courts have discretion whether to hear a case brought pursuant to the Declaratory Judgment Act. *See Nat'l Chiropractic Mut. Ins. Co. v. Doe,* 23 F.Supp.2d 1109, 1113, 1116 (D.Alaska 1998). The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. A federal court that has jurisdiction over the parties and the subject matter is not required to grant declaratory relief if prudential concerns specific to the case suggest that it should not grant relief. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 282–83, 115 S.Ct. 2137, 132

L.Ed.2d 214 (1995); *Gov't Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1223 (9th Cir.1998).

Essentially, this case concerns whether legislation changing the composition of the policy board and the manner in which its members are chosen and restrictions on the use of funds for transportation enhancements breach the AMATS agreement between the Municipality and the State. The answer to this issue turns solely on state law. It is in this context that this Court must evaluate the propriety of issuing a declaratory judgment that would determine the rights of the parties or leave the parties to a potential action in state court. To make that determination, it is necessary to consult certain prudential concerns that have traditionally guided courts considering declaratory judgment actions.

 Primarily these concerns address judicial economy and fairness to the parties. Where resolution of the issues will determine whether the matter is decided in state or federal court considerations of comity and federalism also come into play. This Court noted in *National Chiropractic Mutual Insurance Co. v. Doe,* that "there is no presumption in favor of abstention in declaratory actions generally. . . ." 23 F.Supp.2d at 1116; *see also Ryan v. Sea Air, Inc.,* 902 F.Supp. 1064, 1069–70 (D.Alaska 1995). "Moreover, 'principles of comity and federalism *do not require* that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court.'" *Dizol,* 133 F.3d at 1226 n. 7 (quoting *Town of Lockport, N.Y. v. Citizens for Cmty. Action at the Local Level, Inc.,* 430 U.S. 259, 264 n. 8, 97 S.Ct. 1047, 51 L.Ed.2d 313 (1977)). There is, however, a presumption in favor of abstention if a state court action is concurrently pending that will determine the same state law issues. *Provident Tradesmens Bank &*

*Trust Co. v. Patterson,* 390 U.S. 102, 126, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Nat'l Chiropractic,* 23 F.Supp.2d at 1116. It is undisputed that Alaska grants its courts the same jurisdiction over declaratory judgments that is available under federal law. *See Ryan,* 902 F.Supp. at 1065 n. 1.

The Ninth Circuit has listed several factors to consider in deciding when a federal court should decline to hear a declaratory judgment action. *Dizol,* 133 F.3d at 1220. The factors to be considered in exercising this discretion are:

(1) To avoid the needless determination of state law issues;

(2) To discourage the filing of declaratory actions as a means of forum shopping;

(3) To . . . avoid duplicative litigation;

(4) To resolve all aspects of the controversy in a single proceeding if possible;

(5) To avoid intervention unless the declaratory action will serve a useful purpose in clarifying the legal relations at issue;

(6) To avoid procedural fencing or permitting one party to obtain an unjust res judicata advantage at the expense of the other;

(7) To avoid entanglement between the federal and state court systems; and

(8) To avoid jeopardizing the convenience of the parties.

*Nat'l Chiropractic,* 23 F.Supp.2d at 1115 (citing *Dizol,* 133 F.3d at 1225 & n. 5).

Several points present themselves. First, since this case raises important issues involving contract interpretation and application of an Alaska statute, it is clear that Alaska's laws and public policies would be at issue. In the event these issues are novel, an Alaska court is a more appropriate jurisdiction to decide questions that arise under Alaska law. Because Alaska law provides the rule of deci-

sion for the substantive questions in this case, this factor weighs in favor of having this Court decline jurisdiction in favor of an Alaska state court.

Second, forum shopping is not a prevailing concern here. Third, all the issues raised in federal court could also be raised in state court, along with additional state court claims, threatening duplicative litigation. The policy of resolving all aspects of a controversy in a single proceeding would thus counsel in favor of the Court declining to adjudicate the action. Fourth, since the declaratory action serves a useful purpose by expediently clarifying the legal obligations at issue, this factor weighs equally in favor of retaining jurisdiction or abstaining from jurisdiction.

Fifth, there is definitely a risk of excessive entanglement between the federal and state court systems. Finally, the degree of the convenience of the parties is not meaningfully at issue since this Court is less than a mile from the Alaska state court. Additionally, there are no claims independent of those for declaratory action pending in the federal case that would require maintenance of this suit in federal court. *Cf. Am. Cas. Co. of Reading, Pa. v. Krieger,* 181 F.3d 1113, 1119–20 (9th Cir. 1999).

While the decision to grant declaratory relief is discretionary and reasonable judges may differ in determining whether to grant it, the balance of factors in this case weigh in favor of exercising the Court's discretion to deny jurisdiction over this declaratory action. A further factor leads to this conclusion. One of the arguments pushed most vigorously by the Municipality is that SB 260, by changing the composition of the policy board, works a "redesignation of the MPO." The State vigorously disputes this contention. The argument's resolution apparently turns on a regulation, 23 C.F.R. § 450.306(k). The regulation indicates that redesignation of

the policy board upon expansion is a matter of state law. The parties do not agree on the meaning of the regulation. Their disagreement focuses on whether under local law a change of the membership in the policy board serves to dissolve the MPO, as it might if the MPO was a partnership or joint venture but might not if the MPO was a corporation or municipal corporation. In the absence of a dissolution it would appear that there would be no need to redesignate. The Alaska Supreme Court will have to make this determination.

**IT IS THEREFORE ORDERED:**

The motion to dismiss at **Docket No. 18** is **GRANTED.** The motion for summary judgment at **Docket No. 19** is **GRANTED** as to the remaining issues.